IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CAMERON THOMPSON,** *et al.*                                                               **PLAINTIFFS**

**v.**                                                                                         **CIVIL ACTION NO.: 2:24-cv-34-KS-MTP**

**INTERMODAL CARTAGE CO., LLC,** *et al.*                                               **DEFENDANTS**

### ORDER

THIS MATTER is before the Court upon Plaintiffs Cameron Thompson and Kellie Nelson's Motion to Compel Document Production [118]. Having carefully considered the Motion [118], the applicable law, and the parties' submissions, the Court finds that the Motion [118] should be GRANTED in part and DENIED in part as set forth below.

### BACKGROUND

Despite the calendar indicating a new year, the parties remain entrenched in old disagreements. According to Plaintiffs, they propounded ninety-seven (97) combined Interrogatories and Requests for Production to Defendants Intermodal Cartage Co., LLC ("IMC"), and Julian Davis.[1] On August 8, 2024, Defendants responded and objected to seventy-three (73) of those requests. The parties were unable to resolve their disputes concerning the propriety of the seventy-three (73) discovery requests at issue.

Consequently, on October 1, 2024, the parties participated in a telephonic discovery conference with the undersigned. While the undersigned opined as to "likely resolutions" regarding the issues raised by the parties, no formal order was entered regarding the same. *See*

---

[1] *See* [119] at 2. The number of discovery requests mentioned (97) may be in error as the Case Management Order [9] permitted only 30 succinct Interrogatories, 30 succinct Requests for Production, and 30 succinct Requests for Admissions.

1

Minute Entry 10/01/2024.  The parties were expected to confer further and hopefully resolve their differences.  *Id*.

The parties failed to settle their disputes, so Plaintiffs filed their first Motion to Compel Document Production [93] on November 1, 2024.  Because the Motion [93] failed to comply with the Local Rules, the Court denied it.  *See* Order [103].

On December 21, 2024, Plaintiffs filed the instant Motion to Compel [118].  They move the Court for an order compelling Defendants to respond to Requests for Production Nos. 1, 2, 3, 9, 11, and 12 propounded to IMC and Requests for Production Nos. 6, 11, and 12 propounded to Davis.  Plaintiffs also ask this Court to "order depositions of Robert Brower, John Suttle, Wayne Wells, and John Tomasso at the convenience of counsel for Plaintiff's [*sic*] in January 2025." [118] at 5.  Defendants oppose the Motion [118] in its entirety.

## ANALYSIS

A party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Fed. R. Civ. P. 34.  *See* Fed. R. Civ. P. 37(a).  Discovery requests under Rule 34(a) are "subject to the scope and limitations of Rule 26(b)." *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016) (cleaned up).  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Such discovery must also be "proportional to the needs of the case[.]"  *Id*.

"The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Lopez v. Don Herring Ltd*., 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).  At the discovery stage, relevancy is broadly construed, and information is

considered relevant if it "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Consequently, the Court has broad discretion over the scope of discovery. *See Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022).

**The Local Rules**

As an initial matter, Plaintiffs *again* violate the Local Rules. Under Local Rule 7(b)(5), a movant's "original and rebuttal memorandum briefs *together* may not exceed a total of thirty-five pages…." L.U. Civ. R. 7(b)(5) (emphasis added). Plaintiffs' original memorandum brief totaled thirty-five pages,[2] exhausting the page-limit set by the Local Rules and leaving no room for a reply brief. Nevertheless, Plaintiffs filed a twenty-seven-page reply brief (brimming with generally redundant information) that included **592** pages of attached exhibits. *See* [135].

Plaintiffs' memorandum briefs, therefore, totaled sixty-two pages and no leave of Court was obtained for the pages that far exceed the thirty-five-page limit set by the Local Rules. Plaintiffs' Motion to Compel [118] could be denied on this basis alone. *Benefield v. Est. of Lockhart*, 2017 WL 4572064, at *3 (S.D. Miss. Mar. 15, 2017). The Court will instead strike Plaintiffs' Reply Brief [135],[3] address the merits of the Motion [118] below, and **admonish** Plaintiffs to comply with the Local Rules in future filings with this Court. The Plaintiffs are also reminded that the Court's objective in addressing a motion is to assess the weight of the arguments, not the weight of the filings.

---

[2] Not to mention an additional 160 pages of exhibits attached to the memorandum brief (and 122 pages of other exhibits attached to the Motion [118]).

[3] *See, e.g., Rigsby v. State Farm Ins. Co.,* 2010 WL 11428407, at n.1 (S.D. Miss. May 5, 2010) (recognizing the Court's discretion to strike motion-briefing memoranda exceeding the thirty-five-page-limit).

**Defendants' Alleged "Go Fish" Responses**

Plaintiffs open with a blanket assertion that "[w]ith all responses, Defendants fail to identify the specific numbered documents that have been produced to accompany the response." [119] at 5.  Plaintiffs thus request that Defendants' responses be supplemented to "identify the specific bates range of documents to which Defendants contend is responsive to the request for production."  *Id*.  Defendants disagree and say that IMC "previously supplemented discovery and specifically identified each document being produced."  [128] at 2.

Under Fed. R. Civ. P. 34(b)(2)(E)(i), "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request[.]"  Here, Plaintiffs do not detail with specificity the responses relevant to this grievance, and the Court is not willing to accept a bare declaration that Defendants have failed to identify the specific Bates numbered documents with respect to "all responses."  Defendants are, however, ordered to supplement their responses to comply with Fed. R. Civ. P. 34(b)(2)(E)(i) by organizing and labeling (including identifying by Bates number) the documents responsive to the discovery requests at issue in this Motion [118] which are discussed below.

**Requests for Production Propounded to IMC**

*Request for Production No. 1*

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 1.  Plaintiffs request the personnel, employee, and/or driver handbooks or manuals of IMC used at any time during the employment of Davis.  Defendants argue that this request is overly broad and disproportionate to the needs of the case.  In any event, they say that they have already produced "the entirety of any handbook or manual contents that relate to handheld cellphone use[.]"  [128] at 2.

"Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate. Consequently, if plaintiffs ... do not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, their motion to compel must fail." *Logan v. Madison Par. Det. Ctr.*, 2013 WL 5781313, at *2 (W.D. La. Oct. 25, 2013) (quotations and citations omitted).

Plaintiffs say that Defendants have not produced any document relating to IMC's driver hiring/retention standards despite its 30(b)(6) representative testifying that they have such a standard compiled in a "one-page document." [119] at 22. Accordingly, Plaintiffs have demonstrated evidence that a responsive document may exist and has been withheld.

As Defendants do not refute this, they shall produce the "one-page document," or any relevant document, regarding IMC's driver hiring/retention standards.

Turning to Plaintiffs' request for further documents relating to handheld devices, Plaintiffs complain that Davis allegedly "never saw" a "one-page document containing the policies on handheld devices"—a document that Plaintiffs admittedly already possess. [119] at 7. True or not, Davis's alleged failure to have seen such a document is inconsequential as to whether this Court should compel Defendants to produce documents beyond those already produced, and the motion is denied to this extent.

***Request for Production No. 2***

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 2. Plaintiffs request all safety, orientation, and employee manuals or similar videos of IMC used at any time during the employment of Davis. Plaintiffs again complain that Davis never received the documents produced by Defendants relevant to this request and that

5

other training documents exist. Defendants reiterate that they have "produced the entirety of any handbook or manual relative to handheld cellphone use." [128] at 3.

The gravamen of this request centers upon IMC's 30(b)(6) representative who testified that certain training "might have been done by a company called Infinit-I… It's either Infinit-I or Tenstreet. I can't remember." [119] at 12. Plaintiffs complain that they have never received any "orientation or training document, module, material, etc. from Infinit-I." *Id*. Instead, they "have only received one incomplete training module from Tenstreet with regard to texting and driving." *Id*.

For their part, Defendants say that, "as has been explained to Plaintiffs, Tenstreet, a third-party vendor, performed Davis's training at his time of hire, and the training materials and certificate of completion of that training as to handheld cellphone usage has been produced." [128] at 3. However, because the request specifically mentioned the production of videos relevant to safety or employee orientation and to the extent any such videos exist, Defendants shall produce copies of all training videos (with audio) relating to the use of handheld cellphones that were provided to Davis while he was employed with IMC and have not yet been produced. All other relief demanded concerning Request for Production No. 2 is denied.

***Request for Production No. 3***

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 3. Plaintiffs request the "Accident Register" relating to the collision at issue and any other such accidents involving Davis as well as any other "Accident Claim Files" provided to IMC's accident review committee for the accident in question.

Defendants argue that "the term 'Accident Claim File' is overly broad, disproportionate to the needs of the case, and vague and ambiguous." [128] at 4. In any event, Defendants say

that they "have produced the accident report, first report of loss, and dash camera video for the accident[,]" and that IMC "did not have an accident review committee." *Id*.

Plaintiffs disagree, noting that IMC's 30(b)(6) representative testified that "[w]e do have a claim file, yes. … We keep documents such as invoices; the police report; we keep some photos of the incident; we make notes tracking like what we're doing with the equipment and, you know how our claim is going, you know, what the process – wherever we are at each stage of this claim." [119] at 13. Plaintiffs argue that all the aforementioned documents are "relevant, discoverable, and a part of the Accident Claim File mentioned in this discovery request." *Id*.

IMC shall supplement its response to Request for Production No. 3 with the documents it used to compile an "accident claim file."

***Request for Production No. 9***

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 9. Plaintiffs request IMC's dispatch and communication records between dispatch and Davis for a period of one month prior to the collision.

Plaintiffs first complain that, although Defendants produced an "audit and dispatch log" (IMC 977-994), it is "unintelligible" because the document produced is a "native excel document which has been converted into a portable document form (PDF), causing the columns and rows to be misaligned." [119] at 14. Plaintiffs requested, however, that any responsive documents be produced "in its native format and in PDF and/or text form." *Id*; *see also* [93-8] and [93-9].

Plaintiffs also complain that the same document divulged "yet another company"—Compcare—that was responsible for monitoring Davis's driving on the day of the crash. *Id*. Plaintiffs contend that Defendants should produce any documents concerning Compcare.

7

Additionally, Plaintiffs complain that IMC has not produced their "telephone records showing all communication between IMC and Davis." *Id*. at 18. Plaintiffs say that Davis testified in his deposition regarding several IMC employees who contacted him via cellphone, but to date, Defendants have not provided a list of names or phone numbers regarding the same.

Defendants say nothing about Compcare or the failure to produce the "audit and dispatch log" in conformity with Plaintiffs' request. They only argue that communications between IMC and Davis were indisputably via Davis's cellphone. Since they have already "produced the entirety of Davis's cellphone records," Defendants say that Plaintiffs "can access each and every communication of Davis's during his employment with IMC and beyond." [128] at 4. As to Defendants' failure to produce the "cell phone numbers of IMC" and its employees who communicated dispatch orders to Davis, Defendants say that Plaintiffs have "identified no specific request where this information was requested." *Id*.

Turning to the first issue regarding the discovery of electronically stored information in this matter, the parties previously agreed "to produce documents in native format upon request." *See* Case Management Order [9]. Here, Defendants failed to honor Plaintiffs' request, and they shall reproduce the "audit and dispatch log" (IMC 977-994) in its native format and in PDF (or other text form).

Turning to the second issue regarding Compcare, Defendants remain silent. To the extent that Compcare monitored IMC's dispatching activities "one month prior to the Crash," Defendants shall supplement their response to Request for Production No. 9 and provide such information.

Finally, the Court denies Plaintiffs' request for the telephone records, associated phone numbers, and service providers concerning various IMC employees who contacted Davis during

8

his employment at IMC. Request for Production No. 9 specifically requests the "dispatch and communication records" of IMC between "dispatch and Davis, for a period of one month prior to the Crash." [119] at 14. While the identity and phone numbers of IMC's employees that may have communicated dispatch orders to Davis are possibly discoverable or relevant to this matter, Plaintiffs did not specifically request either. Thus, that portion of the request is denied.

***Request for Production No. 11***

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 11. Plaintiffs request all personnel files and driver investigation history of IMC for Davis. Specifically, they demand the production of "[a]ll documents used and maintained by IMC's MobileCom division;"[4] records concerning Davis's prior "traffic citation for illegal use of a handheld device;" and documents relating to IMC's "driving hiring standard and driver retention standard." [119] at 22.

Defendants argue that they have already provided Davis's "commercial driver's license, pre-employment screen documents, certificate of compliance with driver license requirements, violation query, pre-employment drug screens, driver data form, pre-employment motor-vehicle records, annual review of driving record, medical certification, and signed road test[,]" and that there "are no other documents in the driver qualification file that would directly indicate or determine Davis's driver qualifications[.]" [128] at 4.

Plaintiffs first demand the production of "all documents" used and maintained by IMC's MobileCom division. Defendants say nothing about MobileCom in their Response [128]. Still, the Court finds that Plaintiffs' request regarding the production of "all documents" used and

---

[4] According to IMC's 30(b)(6) representative, IMC's MobileCom Division consists of personnel that monitor IMC's companies for safety violations, such as logging violations (among others). *See* [119] at 21.

9

maintained by IMC's MobileCom division is overly broad and disproportionate to the needs of the case. So the Court modifies the request as follows: Defendants shall produce only the documents that MobileCom possesses (if any) regarding safety violations committed by Davis during his employment with IMC.

Second, Defendants say that they have produced the "PSP report" (cited by Plaintiffs as "Exhibit 22") which shows a warning for Davis's alleged handheld cellphone use while driving. [124] at 5. They further explain that Davis did not receive a ticket or citation for this conduct— only a warning. *Id*. at n.3. No other documents apparently exist relating to this incident, and the Court cannot compel a party to produce non-existent documents. *See ORIX USA Corp. v. Armentrout*, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016) (internal citations omitted). Accordingly, no further production is required as to this issue.

Finally, as discussed above regarding Request for Production No. 1, Defendants do not refute their failure to provide a "one-page document" relating to IMC's driver hiring/retention standards. Defendants shall produce the "one-page document," or any relevant document, regarding IMC's driver hiring/retention standards.

***Request for Production No. 12***

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 12. Plaintiffs request copies of any agreement/contracts between IMC and any other entity concerning the lease/use of vehicle operated by Davis at the time of the collision or any such contracts that would bear on the scope of employment or identify the employers of Davis at the time of the collision. Plaintiffs particularly complain that Defendants have not produced (1) any contracts that reference IMC and telematic providers at the time that Davis was

employed; (2) the additional insurance policy taken out by Davis; and (3) the employment contracts between IMC and Davis.

For their part, Defendants say that Davis's truck was not equipped with equipment that "did, or could, monitor or document handheld cellphone usage," and that "[t]his has been established over and over through deposition testimony and interrogatory responses." [128] at 5. Moreover, Defendants say that they have produced the one forward-facing dashcam-- "which is designed to capture activity outside the truck"—and that they have already produced Davis's additional insurance policy "as IMC 809-976." *Id*. Defendants argue that the request for contracts between IMC and any telematics provider is overly broad and disproportionate to the needs of the case; they say nothing about Davis's employment contracts.

Defendants shall produce any contracts it had with any telematics providers that were in effect at the time of the crash. Defendants shall also produce a copy of any employment contract, or termination document, involving Davis. Defendants are not required to produce any further documents concerning Davis's additional insurance policy.

**Requests for Production Propounded to Davis**

*Request for Production No. 6*

The Motion [118] is DENIED with respect to Request for Production No. 6. Plaintiffs request all documents evidencing agreements, correspondence, communications, or memorandums concerning the collision between Davis and any other person. Plaintiffs say Defendants have not produced the cellphone numbers for IMC and the employee/representatives of IMC who communicated dispatch orders and other job activities/responsibilities to Davis while he was driving, nor have they produced the phone Davis used during the crash.

While the identity and cellphone numbers for IMC employees that communicated with Davis concerning the collision may be discoverable and relevant, Defendants correctly note that Plaintiffs did not request that information. The same is true regarding Davis's allegedly damaged cellphone.[5] Accordingly, Defendants will not be required to supplement any further response to the Request for Production No. 6.

*Request for Production No. 11*

The Motion [118] is GRANTED with respect to Request for Production No. 11. Plaintiffs request all contracts between Davis and IMC. Defendants hedge their bets on their position that "vicarious liability has been stipulated by IMC" and say that, consequently, employment contracts or documents evincing the termination of employment are not relevant to the issues in this matter. [128] at 6.

The Court disagrees; Defendants shall produce a copy of any employment contract (or termination document) between Davis and IMC.

*Request for Production No. 12*

The Motion [118] is GRANTED in part and DENIED in part with respect to Request for Production No. 12. Plaintiffs request a copy of the driver's file, employee file, payroll file, and training file concerning Davis. Specifically, Plaintiffs complain that Defendants have not fully produced certain training materials (including four videos) or related certifications concerning the use of handheld cellphone while driving.

---

[5] Moreover, a cellphone is not a generally understood as a "document," and Plaintiffs do not direct the Court to any argument to the contrary.

Defendants say they have produced the "entirety of training material relative to handheld cellphone usage for Davis," and that a request for the entirety of training material made available to Davis is overly broad and not proportionate to the needs of the case. [128] at 7.

To the extent that there exists any video or training files (including quizzes and responses thereto) regarding the use of handheld cellphones that were provided to Davis during his employment with IMC and have not yet been produced, Defendants shall produce the same forthwith. All other relief demanded concerning Request for Production No. 12 is denied.

**Request to Order Brower, Suttle, Wells, and Tomasso's Depositions**

Plaintiffs abruptly conclude their thirty-five-page memorandum by requesting that this Court "order depositions of Robert Brower, John Suttle, Wayne Wells, and John Tomasso at the convenience of counsel for Plaintiff's [sic] in January 2025." [119] at 35. Plaintiffs provide no argument in support of this request. In any event, these depositions have already been scheduled. *See* [141] [143] [145] [147]. Accordingly, this request is DENIED as moot.

IT IS, THEREFORE, ORDERED that:

1. Plaintiffs Cameron Thompson and Kellie Nelson's Motion to Compel Document Production [118] is GRANTED in part and DENIED in part as set forth herein; and

2. To the extent required by this Order, Defendants shall supplement their responses on or before January 23, 2024.

SO ORDERED, this the 15th day of January, 2025.

s/Michael T. Parker<br>United States Magistrate Judge