**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**CAMERON THOMPSON,
KELLIE NELSON, Individually and
as mother and next friend of J.C., a minor**                                    **PLAINTIFFS**

**v.**                                                    **CIVIL ACTION NO. 2:24-cv-34-KS-MTP**

**INTERMODAL CARTAGE CO., LLC,
D/B/A IMC HOLDING, LLC; and
JULIAN DAVIS, Individually**                                              **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This cause comes before the Court on the Amended Motion for Judgment on the Pleadings [116] filed by Defendant, Intermodal Cartage Co., LLC ("IMC"), wherein IMC seeks to have all claims against it dismissed because it has stipulated to vicarious liability for the actions of Julian Davis, the driver of an 18-wheeler that caused the motor vehicle accident at issue. Plaintiffs have also filed a Motion for Leave to File a Second Amended Complaint [166]. Both motions have been fully briefed, and based on the analysis set forth below, the Court finds that IMC's motion will be granted in part and denied in part, and the Plaintiffs' motion will be granted.

I.      **BACKGROUND**

This case arises from a traffic accident that occurred on December 21, 2022 at an intersection on U.S. Highway 98, involving an 18-wheeler and a Ford F-150 pickup truck. Julian Davis ("Davis") was driving the 18-wheeler, and Cameron Thompson, whose son J.C. was a passenger, was driving the pickup. It is alleged that, at the time of the accident, dashcam footage shows Davis manually using his cellphone and because of this distraction, Davis ran a stop sign and struck the pickup, which totaled the pickup and caused personal injuries to Cameron and J.C.

Cameron and his wife, Kellie, on her own behalf and on behalf of J.C., filed this action against Davis and IMC as Davis's employer. Plaintiffs' First Amended Complaint alleges the

following causes of action:

Count I- Cameron's Claim of Negligence Against Davis

Count II- J.C.'s Claim of Negligence Against Davis

Count III-Cameron's Claim of Negligence Per Se Against Davis

Count IV- J.C.'s Claim of Negligence Per Se Against Davis

Count V- Cameron's Claim of Gross Negligence and Recklessness Against Davis

Count VI- J.C.'s Claim of Gross Negligence and Recklessness Against Davis

Count VII- Cameron's Claims of *Respondeat Superior* Against IMC

Count VIII- J.C.'s Claims of *Respondeat Superior* Against IMC

Count IX- Cameron's Claims of Negligent Hiring, Negligent Training, Negligent Retention, Negligent Supervision, and Improper Vehicle Maintenance & Inspection Against IMC

Count X- J.C.'s Claims of Negligent Hiring, Negligent Training, Negligent Retention, Negligent Supervision, and Improper Vehicle Maintenance & Inspection Against IMC

Count XI- Cameron's Claim for Violations of the FMSCA and FMSR [sic][1] Against IMC

Count XII- J.C.'s Claim for Violations of the FMSCA and FMSR [sic] Against IMC

Count XIII- Kellie's Claim of Loss of Consortium Against IMC and Davis

*See* [2-5].[2]

IMC and Davis filed a stipulation into the record in which they stipulate that "Davis was an employee of IMC, was operating his vehicle in the course and scope of his employment with IMC, and whose negligence is imputed to his employer and Defendant herein, IMC." [51]. The Defendants also stipulate to liability on Plaintiffs' "claims of simple negligence as to Davis's actions for all compensatory damages directly and proximately caused by the subject automobile

---

[1] The acronyms do not appear to be accurate. The Motor Carrier Safety Improvement Act of 1999 created the Federal Motor Carrier Safety Administration (FMCSA), codified at 49 U.S.C.A. § 113, which then promulgated the Federal Motor Carrier Safety Regulations (FMCSR). *See A.D. Transp. Express, Inc. v. United States*, 290 F.3d 761, 762 (6th Cir. 2002).

[2] The First Amended Complaint [2-5] was filed in state court before this action was removed on March 7, 2024. [1].

accident that occurred on or about December 21, 2022, and which is the subject of this lawsuit." *Id.* Further, they stipulate "that Davis was negligent in the operation of his motor vehicle at the time of the subject accident and that his negligence was the proximate cause of the accident." *Id.*

In its Amended Motion for Judgment on the Pleadings, IMC makes two overarching arguments. The first argument is directed to the legal propriety of the direct claims against it, while the second is aimed at the sufficiency of the pleading itself. IMC's first argument is that all of Plaintiffs' non-vicarious, direct liability claims against IMC ("direct, simple negligence claims"), as well as any punitive damages claims, must be dismissed under Mississippi law because it has stipulated to vicarious liability for Davis's simple negligence. Next, IMC argues that even if Plaintiffs were able to maintain certain claims against IMC, the allegations pled in the First Amended Complaint fail to bring the claims into plausibility. The Court will address each argument, as well as Plaintiffs' response, and then address the Motion for Leave to Amend.

## II.    DISCUSSION OF MOTION FOR JUDGMENT ON THE PLEADINGS

### A.  Legal Standard

IMC brings its amended motion pursuant to Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion brought under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

The Court applies the same standard for dismissal to Rule 12(c) motions that is applied to motions to dismiss for failure to state a claim under Rule 12(b)(6). *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 210, 209-210 (5th Cir. 2010); *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.

2004). To avoid dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court will "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (internal quotation marks, citation, and alteration omitted). However, the Court is not obligated to accept threadbare recitals of the elements of the cause of action, and legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 678-79. When evaluating a Rule 12(c) motion, the Court considers the contents of the pleadings, including the complaint and the answer. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

### B.  Analysis

#### 1.  The propriety of dismissing *all* non-vicarious liability claims under Mississippi law

IMC asserts that all claims against it that are not based on vicarious liability, including any claim for punitive damages, must be dismissed because it has stipulated to its vicarious liability for Davis's simple negligence in causing the accident. Plaintiffs make no concession in this regard, instead arguing that all direct claims *are* viable.

Because this is a diversity case, this court is obligated to "apply the substantive law of the forum state." *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 225 (5th Cir. 2020)(quoting *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018)); *Adcock v. S. Austin Marine, Inc.*, No. 2:08-cv-263-KS-MTP, 2009 WL 3633335, at *4 (S.D. Miss. Oct. 30, 2009) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). When a state's highest court has not considered an issue of state substantive law, the federal court must make an "*Erie* guess"

and "determine as best it can, what the highest court of the state would decide." *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 375 n.11 (5th Cir. 1999) (quoting *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). "In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland*, 524 F.3d 676, 678 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002)).

In making its "guess," the Court can look to "(1) state court decisions and Supreme Court dicta; (2) the lower court ruling (not applicable here); (3) the general rule on the issue; (4) the rule in other states Mississippi looks to when it formulates its substantive law; and (5) other available legal sources, such as treatises and law review commentaries." *Bryant v. Allstate Ins. Co.*, 790 F. Supp. 676, 677–78 (S.D. Miss. 1991)(citations omitted). The Court will first analyze Plaintiffs' direct claims of simple negligence against IMC and then address punitive damages.

### a.   Direct, simple negligence claims

In Counts IX and X of the First Amended Complaint, Cameron and J.C. both bring claims against IMC for negligent hiring, training, retention, supervision, as well as "improper vehicle maintenance and inspection." In Counts XI and XII both plaintiffs allege claims for violations of the Federal Motor Carrier Act and the Federal Motor Carrier Safety Regulations.[3]  IMC argues that because it has admitted vicarious liability for Davis's negligence, Mississippi law is indisputably in its favor that such claims must be dismissed.

---

[3] Plaintiffs do not argue such violations provide a direct cause of action but that the regulations provide a duty, such that a violation is evidence of negligence *per se*. Most courts have held that a private right of action does not exist under the FMCSR. *See Brown v. Powers*, No. 2:24-CV-00004-HEA, 2024 WL 4370845, at *3 (E.D. Mo. Oct. 2, 2024) (collecting cases); *Khnanisho v. Southern Mail Svc., Inc.*, No. 3:22-cv-02791-N-BT, 2024 WL 3207032, *4 (N.D. Tex. June 20, 2024) (report and recommendation, adopted on 7/30/24 [CM/ECF Doc. No. 50]) (citing *Fuller v. Werner Ent., Inc.*, 2018 WL 3548886, at *4 (N.D. Tex. July 24, 2018); *Lipscomb v. Zurich Am. Ins. Co.*, 2012 WL 1902595, at *1–2 (E.D. La. May 25, 2012)).

It is true that for decades, federal district courts in Mississippi, including this Court, have consistently dismissed direct, simple negligence claims against an employer who admits vicarious liability, and more specifically, claims of negligent hiring, supervision, and retention and negligent entrustment by making *Erie* guesses. *See, e.g., Williams v. Pemberton Truck Lines, Inc.,* No. 3:20-cv-759-KHJ-LGI, 2022 WL 17640350 (Dec. 13, 2022); *Coakley v. Cole,* No. 3:22-cv-251-TSL-LGI, 2022 WL 2911660 (July 22, 2022); *Deliefde v. Nixon,* No. 3:19-cv-229-DPJ-FKB, 2021 WL 4164680 (Sept. 13, 2021); *Clark v. Lard Oil Co., Inc.,* No. 2:18-CV-00109-KS-MTP, 2019 WL 5802379 (S.D. Miss. Sept. 6, 2019); *Dinger v. Am. Zurich Ins. Co.,* No. 3:13-CV-46-MPM-SAA, 2014 WL 580889 (N.D. Miss. Feb. 13, 2014); *Roberts v. Ecuanic Exp., Inc.,* 2012 WL 3052838 (S.D. Miss. July 25, 2012) (citing *Welch v. Loftus,* 776 F. Supp. 2d 222 (S.D. Miss. 2011); *Lee v. Harold David Story, Inc.,* 2011 WL 3047500 (S.D. Miss. 2011); *Curd v. W. Express, Inc.,* 2010 WL 4537936 (S.D. Miss. 2010); *Booker v. Hadley,* 2009 WL 2225411 (S.D. Miss. 2009); *Davis v. ROCOR International,* No. 3:00-cv-864, 2001 U.S. Dist. LEXIS 26216 (Dec. 19, 2001); *Cole v. Alton,* 567 F. Supp. 1084, 1085–86 (N.D. Miss. 1983). And this is but a sampling of cases.

Surprisingly, after all this time, there has yet to be a pronouncement from the Mississippi Supreme Court on the issue of whether an employer who admits or stipulates to vicarious liability is entitled to a dismissal of direct negligence claims asserted against it. Thus, the Court must still make an *Erie* guess, and the Court must review Plaintiffs' arguments to determine whether they can convince this Court to break ranks with the numerous previous cases, many of which are directly on point, and find in their favor.

First, Plaintiffs rely on the case of *Foradori v. Harris,* 523 F.3d 477 (5th Cir. 2008), wherein the Fifth Circuit held that the district court properly submitted to the jury the issues of the company's failure to adequately train, supervise, and regulate its employees, as well as control the actions of its employee. [158] at p. 19. However, this case is not analogous to this case because it

involved an attack of a customer by an off-duty employee in the parking lot of a Captain D's restaurant that left the customer a quadriplegic. There was no stipulation of vicarious liability. In fact, the trial court eventually dismissed the vicarious liability claims against Captain D's for the off-duty employee's assault on the Plaintiff because it was an intentional tort committed outside the scope and course of his employment. 523 F.3d at 484. Thus, the *Foradori* case out of the Fifth Circuit is not persuasive to this Court that it should make a new *Erie* guess.

Next, Plaintiffs acknowledge the dismissals from the plethora of federal district court cases and argue these cases are fundamentally flawed because they all stem from a ruling in *Nehi Bottling Co. v. Jefferson*, 84 So. 2d 684 (1956), which, Plaintiffs argue, was simply an appeal from the trial court's evidence ruling dealing with a negligent entrustment claim. The Court agrees with Plaintiffs' observation on the context of *Nehi*. However, since 2001, learned judges in this district have continued to make *Erie* guesses about direct, simple negligence claims against employers (particularly in auto accident cases) and most have concluded, as in the cases cited *supra*,[4] that Mississippi law supports the dismissal of direct, simple negligence claims against an employer who admits to vicarious liability,[5] even specific negligence per se claims based on breaches of the FMCSR as Plaintiffs claim here. *See Harris v. MVT Servs., Inc.*, No. 1:06-cv-251-LG-RHW, 2007 WL 2609780 (Sept. 5, 2007) (dismissing all direct negligence claims, including negligence relating to violations of FMCSR). Thus, Plaintiffs' argument that these cases are fundamentally flawed,

---

[4] The Court is aware of the ruling in *Benefield v. Estate of Lockhart*, No. 1:15-cv-190, 2017 WL 4572064 (S.D. Miss. Mar. 15, 2017) that allowed direct, simple negligence claims, but the facts of that case are markedly different. *See Pemberton Truck Lines*, 2022 WL 17640350, at *2-3 (discussing the facts of *Benefield*).

[5] The Court acknowledges that in *Hopson v. Slay Transportation Co., Inc.*, Judge Henry Wingate denied a motion for partial summary judgment on direct negligence claims to a defendant who had stipulated to vicarious liability but apparently relied solely on *Cole v. Alton*, 567 F. Supp. 1084 (N.D. Miss. 1983); *Hood v. Dealers Transport Co.*, 459 F. Supp. 684 (N.D. Miss. 1978); and *Nehi Bottling Co. of Ellisville v. Jefferson*, 84 So. 2d 684 (Miss. 1956). The court found that these cases "deal with evidentiary issues, rather than the issue of what claims may be brought." No. 3:04CV976WS, 2006 WL 8454639, at *1 (S.D. Miss. July 31, 2006). However, IMC relies on many more recent cases that go beyond evidentiary issues and deal precisely with the issue at hand.

without more than distinguishing the *Nehi Bottling* case, also does not convince the Court to make a new *Erie* guess.

Next, Plaintiffs rely on *Gonzalez v. Coastal Industrial Contractors, Inc*., 316 So. 3d 612 (Miss. 2021), but as IMC points out, the dismissal of direct, simple negligence claims based on a stipulation of vicarious liability was not at issue there.[6] Rather the issues on appeal were whether the trial court erred by excluding relevant evidence demonstrating the company's reckless disregard for the safety of others, by refusing to allow the issue of punitive damages to be submitted to the trier of fact and refusing to recuse or to declare a mistrial for punitive damages. *Id.* at 615. The issue before the court was not one of direct simple negligence liability; instead, it involved the propriety of granting a directed verdict on the plaintiff's punitive damage claims based on the evidence presented in plaintiff's case in chief. *Id.*

In *Harris*, Judge Barbour quoted from *Davis v. ROCOR International*, wherein the court stated that it "was unable to find, and was not cited to, any Mississippi case which allowed a plaintiff to recover damages on claims of negligent hiring, training or retention in addition to those that resulted because of the negligent acts of an employee." 2007 WL 2609780 at *2. The court in *Harris* found the same to be true in 2007, *see id*., and this Court finds the same to be true in 2025. Plaintiffs have not shown any viable Mississippi authority, federal or state, that contradicts the principle of law at issue here.

Moreover, once again, when making an *Erie* guess, it is proper for this Court "to look to decisions of lower state courts . . . as to how a state's highest court would decide an issue." *Gaia*

---

[6] The Supreme Court, in reciting the procedural history, noted that the direct liability claims against the employer had been dismissed due to an admission and stipulation regarding vicarious liability, but the propriety of that dismissal was not at issue. 316 So.3d at 614. Plaintiffs here distinguish that dismissal because the employer had stipulated not only that the driver was acting in the course and scope of his employment but also that the driver's actions constituted simple negligence and the driver's negligence was the proximate cause of the accident. [158] at pp. 20-21. Plaintiffs state, "Here ICC has not stipulated that the action of Davis caused the accident or that Davis's actions constituted simple negligence." *Id*. at p. 21. But that is exactly what IMC and Davis have stipulated. *See* [51].

*Techs. Inc.*, 175 F.3d at 375 n. 11 (citing *Shanks v. AlliedSignal*, 169 F.3d 988, 993 n. 7 (5th Cir.1999). With that in mind, the Court acknowledges that the Mississippi Court of Appeals directly considered this specific issue and followed the federal courts. In 2017, in *Carothers v. City of Water Valley*, Judge Kenny Griffis, who became a Mississippi Supreme Court Justice the following year, wrote the court's opinion that held that direct negligence claims against employer were properly dismissed on admission of vicarious liability by employer. 242 So. 3d 138, 144 (Miss. Ct. App. 2017) (Griffis, J.).[7] Last year, the Mississippi Court of Appeals in *Taylor v. Johnson*, relied on and replicated the holding in *Carothers*, holding that partial summary judgment was appropriate because the company had admitted the driver was acting within the course and scope of his employment with the company. 395 So. 3d 402, 408 (Miss. Ct. App. 2024).[8]

Plaintiffs acknowledge this authority but offer insufficient reasons to reject it. Plaintiffs claim the limited holding of *Carothers* does not reach the direct liability claims at issue here. [158] at p. 22. Plaintiffs attempt to make a distinction regarding its claims for negligence *per se* against IMC under the FMCSR by relying on *Utz v. Running & Rolling Trucking, Inc.*, 32 So. 3d 450 (Miss. 2010). While it appears that at the time of trial in the *Utz* case, which involved an 18-wheeler accident, there was a pending claim against the trucking company that employed the driver, who was also sued, for a violation of the FMCSR for failing to provide reflective tape. *See Utz*, 32 So. 3d at 456. The issues on appeal involved evidentiary rulings and jury instructions. *See id*. at 457, 474. There is no mention of the procedural posture of the plaintiff's negligence *per se* claim against the trucking company or any prior rulings in that regard. More to the point, the court was not called on to determine the propriety of allowing the direct claim against the trucking

---

[7] Judge Daniel Jordan made this observation in his Order in the *Deliefde v. Nixon* case. *See* 2021 WL 4164680, at *6.
[8] It is also important to note that the Mississippi Supreme Court denied writs of certiorari in both the *Carothers* and *Taylor* cases. *See Carothers v. City of Water Valley*, 246 So. 3d 67 (Miss. 2018); *Taylor v. Dart Transit Co.*, No. 2022-CT-00734-SCT, 2024 WL 4687675 (Miss. Oct. 31, 2024).

company to proceed when the company had stipulated to vicarious liability, if it even had so stipulated.[9] Thus, the *Utz* opinion provides no persuasive value for making a new *Erie* guess.[10]

Finally, Plaintiffs direct the Court to recent pronouncements under Louisiana law, and more particularly, a case in which the Louisiana Supreme Court held that an employer sued for both its own negligence and vicarious liability for an employee's negligence is not automatically relieved from liability for its own negligence by stipulating that the employee was acting in the course and scope of employment. *See Martin v. Thomas*, 346 So. 3d 238, 248 (La. 2022). Plaintiffs urge this Court to adopt the court's reasoning in *Martin*, which on its face seems persuasive.

However, in considering *Martin*, the Court has been mindful of two things. First, the outcome is well-grounded in *Louisiana* law and appears sound, but this Court must "defer to intermediate state appellate court decisions [of this state], unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Eurocopter Deutschland*, 524 F.3d at 678. Accordingly, this Court must defer to *Carothers* because Plaintiffs have not brought forth other persuasive data other than out-of-jurisdiction precedent to show that the tide may be turning on this issue of law. While that could be true,[11] as noted previously, the Mississippi Court of Appeals followed *Carothers* as recently as last year.

And second, this Court must remember that the Fifth Circuit has cautioned:

As a federal court, "it is not for us to adopt innovative theories of [state law], but

---

[9] Plaintiffs' recitation of the jury instructions from *Utz* may very well be proper statements of the law, but that law does nothing to decide the issue before this Court.

[10] Plaintiffs next argument regarding IMC being a "common carrier" and being held to a higher standard is confusing. In this case, Davis was driving an 18-wheeler, not a public transportation vehicle. *See Boyd Tunica, Inc. v. Premier Transp. Servs., Inc.*, 30 So. 3d 1242, 1250 (Miss. Ct. App. 2010) (explaining the difference between a carrier of passengers for hire, such as a casino shuttle, and a common carrier that is engaged in public transportation services generally and is available to all persons who might apply to ride).

[11] There are several jurisdictions that hold the minority view that an employer's stipulation of vicarious liability does not eliminate a plaintiff's direct negligence claims against the employer. *See* Natalie R. Earles, *Stipulating Vicarious Liability to Avoid Direct Negligence Claims: Why This Relic of the Past Should be Abandoned in Louisiana*, La. L. Rev. (noting the minority of jurisdictions includes Michigan, Ohio, Alabama, Kansas, South Carolina, Virginia, and Georgia with case citations) https://lawreview.law.lsu.edu/2021/10/27/stipulating-vicarious-liability-to-avoid-direct-negligence-claims-why-this-relic-of-the-past-should-be-abandoned-in-louisiana/ (last accessed 2/26/25).

simply to apply that law as it currently exists," and to rule as we believe the state's highest tribunal would rule. We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best.

*Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986). With these things in mind, the Court finds that based on Mississippi law as it exists, all direct, simple negligence claims against IMC, even those based on violations of the FMCSR, shall be dismissed. This includes all direct, simple negligence claims in Counts IX, X, XI, XII.

### b. Punitive Damages Claim

IMC argues that Mississippi law that mandates dismissal of direct liability claims means *all* direct liability claims without exception. [165] at p. 7. In other words, according to IMC, because of its stipulation, not only can direct, simple negligence claims against it not stand, but also there can be no punitive damage claim based on vicarious liability or otherwise. The Court agrees that punitive damages cannot be based vicarious liability, as that is the courts' consensus in this district. *See e.g., Pemberton Truck Lines*, 2022 WL 17640350, at *3; *Clark*, 2019 WL 5802379, at *3; *Littlejohn v. Werner Enterprises, Inc*., No. 1:14-CV-00044, 2015 WL 3484651 (N.D. Miss. June 2, 2015); *Lee*, 2011 WL 3047500 * at 2 ; *Dawson v. Burnette*, 650 F. Supp. 2d 583, 586 (S.D. Miss. 2009); *Bradley v. Wal–Mart Stores, Inc*., No. 2:04-cv-360, 2006 WL 2792338, at *4 (S.D. Miss. Sept. 27, 2006).

The Court also agrees that there is no such thing as a "direct punitive damages" claim because, as IMC points out, before punitive damages can attach, there must be an underlying claim upon which a plaintiff can be awarded compensatory damages. *See* Miss. Code Ann. § 11-1-65(c) ("If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact."); *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 392 (Miss.

2014) ("Punitive damages do not exist in a vacuum. Absent a valid claim for compensatory damages, there can be no claim for punitive damages."). Thus, IMC urges, because there can be no direct, simple negligence claims against it as a matter of law due to its stipulation, there can be no recovery of punitive damages as a matter of law.

In making this argument, IMC relies not only on the language of the punitive damage statute recited above but also cases from this Court. [165] at pp. 8-9. To the extent the undersigned judge has dismissed punitive damages claims as a matter of law, as in *Myers v. Legacy Equipment, Inc.*, No. 2:19-cv-100-KS-MTP, 2019 U.S. Dist. LEXIS 214224 (S.D. Miss. Dec. 12, 2019), the Court now recedes from such decisions. A stipulation to vicarious liability should not, and does not, result in total immunity.[12]

The better approach, if the Court is to maintain the view that there can be no direct, simple negligence claims, is that which this Court adopted in *Roberts v. Eucanic Express, Inc.* on a Motion to Dismiss when it explained:

> This Court has previously implied—if not explicitly held—that a plaintiff's independent claims for punitive damages may proceed despite the employer's admission that its employee was acting in the course and scope of employment. In the opinion of the undersigned judge, this is a reasonable conclusion.
>
> As noted above, once an employer has admitted that it is liable for its employee's actions, evidence pertaining only to issues of negligent hiring, entrustment, supervision, or maintenance becomes superfluous because the employer's liability will necessarily depend on the employee's liability. However, an employer cannot be liable for punitive damages under a theory of vicarious liability. Therefore, evidence pertaining to the employer's independent gross negligence would not be superfluous or redundant, as there is no means for a plaintiff to obtain punitive damages against the employer solely through claims against the employee. Accordingly, while dismissal of Plaintiff's simple negligence claims against Ecuanic—for which no punitive damages may be awarded—is appropriate, dismissal of Plaintiff's gross negligence claims against Ecuanic would be inappropriate at this time.

---

[12] This Court is simply not willing to, as a matter of law, cut off a plaintiff's ability to recover punitive damages against an employer under an adequately egregious scenario simply because of an employer's unilateral decision to stipulate to liability for the employee driver's simple negligence.

No. 2:12-cv-84, 2012 WL 3052838, at *2 (S.D. Miss. July 25, 2012). Other courts have held similarly. *See e.g., Pemberton Truck Lines,* 2022 WL 17640250 (conducting gross negligence analysis against employer after granting summary judgment on direct, simple negligence claims); *Dinger*, 2014 WL 580889, at *3 (allowing gross negligence claim to remain on motion to dismiss); *Gaddis v. Hegler*, No. 3:10-cv-249-CWR-LRA, 2011 WL 2111801 (S.D. Miss. May 26, 2011) (conducting analysis of gross negligence claim against employer after granting summary judgment on direct, simple negligence claims).[13] Therefore, the Court denies IMC's motion in so far as it seeks a judgment that gross negligence/punitive damages are precluded as a matter of law because it has stipulated to vicarious liability.[14]

Obviously, such a claim must be properly plead, and ultimately, supported by sufficient evidence to show "actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or [] actual fraud." Miss. Code Ann. § 11-1-65(a); *see also Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006) (noting that the defendant's conduct must include "some element of aggression, insult, malice, or gross negligence that evidences a ruthless disregard for the rights of others" to justify an award of punitive damages). Because this is not a

---

[13] This view seems to be at least tacitly supported by *Gonzalez v. Coastal Industrial Contractors, Inc*., the Mississippi Supreme Court case decided in 2021. *See supra*, pp. 8-9. In *Gonzalez*, the plaintiff filed a motion for reconsideration and for clarification of the trial court's order dismissing the direct liability claims against employer company, Coastal, which the court denied. *Gonzalez*, 316 So. 3d at 614. Coastal later filed a motion for partial summary judgment on the issue of punitive damages and argued, just as Defendants have here, that as a matter of law, the plaintiff was prohibited from recovering punitive damages based on a claim of direct liability, which the court also denied. *See id*.

[14] The Court acknowledges Defendants' further argument that this "gross negligence exception" runs afoul of state law. [165] at p. 11. But the Court disagrees. Defendants argue that gross negligence is not a separate cause of action, yet the case cited for that proposition, *Kaplan v. Harco Nat'l Ins. Co*., states rather that *punitive damages* are not a cause of action but a remedy. 716 So. 2d 673, 680 (Miss. Ct. App. 1998)). The Court agrees that punitive damages are not a "cause of action" meant to compensate but more so to punish a party when that party's gross negligence/malice/recklessness warrants it. *See Miss. Power Co. v. Jones*, 369 So.2d 1381, 1387 (Miss. 1979). Disallowing concurrent simple negligence claims when compensatory damages would effectively be satisfied from the same pocketbook is one thing, but to allow an employer to shield itself as a matter of law from potential punitive damages under a claim of gross negligence is a bridge too far. Defendants also claim that gross negligence is not a separate claim but only a "higher degree of negligence" than simple negligence. Regardless of how the negligence is technically viewed, the Court finds that such claims are and should be allowed.

summary judgment motion, but a Rule 12(c) motion, we look not at the sufficiency of the evidence at this time, but only the sufficiency of the pleadings.

### 2. Sufficiency of Plaintiffs' gross negligence claims

IMC argues that Plaintiffs' gross negligence claims against IMC are insufficiently pled under the federal pleading standard because they lack factual content to take the claims from conceivable to plausible. [117] at p. 5. Having reviewed the First Amended Complaint, the Court agrees. When looking at the allegations of IMC's actions (apart from Davis's actions), there are too few facts stated to make a claim for even simple negligence, let alone one of gross negligence. The pleading contains mostly conclusory allegations and legal conclusions, which the Court does not accept. *SW Airlines Pilots Ass'n v. SW Airlines Co*., 120 F.4th 474, 482 (5th Cir. 2024).

Under the Common Allegations, Plaintiffs allege that IMC and Davis were under a duty to (a) operate the 18-wheeler in a safe and reasonable manner, in accordance with the Mississippi Rules of the Road, and the Federal Motor Carrier Safety Regulations; and (b) to strictly comply with State and Federal law, and applicable rules of the road including the FMCSR. [2-5] at ¶ 14. The Defendants recklessly and/or negligently breached these duties and their breaches proximately caused the collision. *Id*. at ¶ 15. As for the allegations in the specific counts against IMC (X-XII), these state nothing more than a list of duties and that IMC "failed and breached those duties and was therefore negligent" and that "the negligence of IMC was a proximate cause of the collision . . . ." *Id*. at ¶¶ 44-46; 48-50.

For the claims under the FMCSR, Plaintiffs make numerous legal statements and then allege only that "IMC failed to comply with both generally accepted practices and obligatory requirements within ground transportation safety"; "IMC failed to exercise due and reasonable care, consistent with industry standards and regulatory obligations"; and "[a]s a proximate result

of IMC's failure to comply with the duties represented above, Cameron/J.C. were injured, and IMC is liable for damages resulting therefrom." *Id*. at ¶¶ 60-62; 72-74.

These allegations are wholly inadequate to properly state a claim for gross negligence. The allegations are completely devoid of statements regarding IMC's actual actions that created an alleged breach of any duty, let alone statements to support that those actions were willful, reckless, or wanton. Therefore, in addition to granting IMC's motion on the direct, simple negligence claims, the Court grants IMC's motion on the direct claims against IMC in the First Amended Complaint, to the extent Plaintiffs attempted to state a claim for gross negligence. Having now dismissed all claims brought directly against IMC in the First Amended Complaint, the Court turns to Plaintiffs' Motion for Leave to File a Second Amended Complaint.

## III.    DISCUSSION OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On March 7, 2024, Defendants removed the action to this Court and filed their Answer on March 14, 2024 [3]. On May 7, 2024, the Court entered a Case Management Order, which required the parties to file motions to amend or add parties by June 17, 2024. [9]. On August 8, 2024, Defendants filed their first Motion for Judgment on the Pleadings, making the same arguments that the Court just ruled on. [27]. However, on November 19, 2024, the Court denied the initial motion on the basis that IMC had not clearly admitted vicarious liability for Davis's actions. [102]. All the while the parties have engaged in significant discovery.

Presumably due to the Court's ruling, on December 2, 2024, Defendants moved for leave to amend its Answer to clarify its admission of vicarious liability,[15] which Plaintiffs opposed. [104]. On December 18, 2024, the Court granted the requested leave [114], and the Amended

---

[15] Defendants specifically sought to qualify Davis's status as an independent contractor "as that term is defined by 49 CFR § 390.5T and that IMC is vicariously liable for his simple negligence." [105-1] at ¶¶ 10, 38, 39, 41, and 42.

Answer was filed two days later. [115]. Upon filing the Amended Answer, Defendants then filed their Amended Motion for Judgment on the Pleadings the same day. [116].

On December 21, 2024, Plaintiffs filed a Second Motion to Compel [118], and on December 30, 2024 filed a Motion to Compel Continuance of 30(b)(6) Deposition of [IMC] and Motion for Sanctions [124]. The briefing on the Amended Motion for Judgment on the Pleadings, as well as the discovery motions, was complete on January 20, 2025. January 20, 2025 was also the day Plaintiffs filed this Motion for Leave to File a Second Amended Complaint. [166].

### A. Legal Standard

Amending pleadings after expiration of the deadline set by a Case Management Order is a two-part inquiry under Rules 15 and 16. First, a party seeking leave to amend the pleadings after the deadline set by the Case Management Order must establish good cause to modify the Order under Federal Rule of Civil Procedure 16(b). *Cross Creek Multifamily, LLC v. ICI Constr., Inc.*, No. 2:18-cv-83- KS-MTP, 2020 U.S. Dist. LEXIS 272517, at *5 (S.D. Miss. Aug. 7, 2020). If good cause is demonstrated, the Court should then consider the five-factor test articulated by the Supreme Court in determining whether to grant leave under Rule 15. *Rozenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiffs contend that both rules are satisfied.

### B. Analysis

#### 1.    Have Plaintiffs established good cause?

Once a scheduling order has been entered, "it may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b). To determine whether good cause exists, courts should consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment;

and (4) the availability of a continuance to cure such prejudice." *S&W Enterprises v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) (citations and brackets omitted).

The first factor under Rule 16(b)'s good-cause standard is the justification for the delay, which courts within this circuit have described as the "most important factor" *See Ryan v. U.S. Dep't of Commerce*, 2021 WL 3134909, at *2 (S.D. Miss. July 23, 2021) ("Courts within the Fifth Circuit have described the explanation for needing more time as the most importance factor."); *Antonio v. Acadian Ambulance Servs. Inc.*, 2015 WL 12941882, at *1 (S.D. Miss. July 29, 2015) ("the first factor alone may be dispositive, outweighing the other three factors"); *Elvir v. Trinity Marine Prod. Inc.*, 327 F.R.D. 532, 550 (M.D. La. 2018) ("most important factor"); *Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 119633, at *3 (E.D. Tex. Jan 12 2017) ("most important factor"); *O'Connor v. Cory*, 2018 WL 5848860, at *4 (N.D. Tex. Nov. 8, 2018) ("most important factor"); *Williams v. Waste Mgmt., Inc.*, 2018 WL 3803917, at *2 (N.D. Tex. June 29, 2018 ("lack of diligence in timely amending his pleadings is paramount").

Plaintiffs assert that they were not aware of the certain specific facts relating to IMC's knowledge and actions until completion of the deposition of Davis and the 30(b)(6) deposition of IMC, the latter of which was taken on November 26, 2024. Plaintiffs ordered an expedited transcript of IMC's deposition, which was reviewed and summarized on December 5, 2024. [167] at p. 7. Plaintiffs then filed two motions seeking additional discovery, which were not ruled upon at the time Plaintiffs filed their motion.[16] Additional discovery was continuing via subpoenas and depositions through the end of January. *Id*. Plaintiffs assert that they timely moved to amend on January 20, 2025, based on the chronology of events.

---

[16] The Court ruled on January 29, 2025 and denied the motion. [191].

Defendants disputes that Plaintiffs have shown good cause and take issue with Plaintiffs' contention that the facts necessary to support Plaintiffs' direct negligence and punitive damages claim were not discovered until, at the earliest, the November 26, 2024 deposition of IMC. [192] at p. 1. Defendants contend that the direct negligence claims are derived mainly from the following facts: That Davis and IMC communicated via his cellphone; IMC's training of Davis as it relates to cellphone usage; and IMC's monitoring of Davis's cellphone usage. [192] at p. 2. Defendants submitted an August 21, 2024 email correspondence, which, they posit, shows that Plaintiffs were aware of this information long before the IMC deposition. The Court disagrees.

Given that the dashcam footage undisputedly shows that Davis was manually utilizing his cellphone at the time of the accident, it only makes sense that the theory of liability against the employer IMC would relate to IMC's "training" and "monitoring" of cellphone usage. The August 21, 2024 email does not reveal specific facts relating to training and monitoring; it only relays those theories. The email urges "these matters are all relevant and discoverable." [192-3].

The email also states that certain records must be provided because "it was the responsibility of IMC" to monitor Davis's cell records and usage, supervise Davis and have policies and procedures and discipline for cell phone usage. This language only relays generic duties, much like the First Amended Complaint did, without revealing any specific known facts. Rather, the email seems to be vehemently requesting the discovery that will flesh out these theories. A theory of liability is not the equivalent of knowing specific facts that support that theory.

Defendants go on to argue that it gave supplied certain records relating to cellphone use in their supplemental discovery responses on November 8, 2024 and that Davis testified on October 11, 2024 to his training with IMC on handheld cellphone use. [192] at pp. 2-3. Frankly, the Court is not interested in parsing out to the day when Plaintiffs knew what they now claim to know and

is pled in the proposed amended pleading. Defendants point to nothing that supports Plaintiffs' theories that was known before the June 2024 deadline to amend passed. All of this discovery occurred well after the deadline for amending the pleadings. Given the delay in the parties receiving the Court's ruling on the initial Motion for Judgment on the Pleadings and the parties' firm belief in their positions and what is relevant to this case, the Court finds that Plaintiffs explanation for their failure to move for leave to amend prior to the deadline is reasonable and weighs in favor of allowing the amendment.

The Court next considers the importance of the amendment. Plaintiffs state their ability to amend is important to establish Defendant IMC's direct negligence and to establish punitive damages. [167] at p. 7. The Court agrees, so long as such claims are sufficiently pled, given that the Court has found that all of Plaintiffs' purported gross negligence claims against IMC in the First Amended Complaint were inadequately pled. Without the amendment, Plaintiffs will be unable to recover the potential punitive damages it seeks against IMC. Thus, this factor also weighs in favor of allowing the amendment.

Next, as for any potential prejudice in allowing the amendment, Defendants argue that the amendments follow undue delay, which prejudices the Defendants. This argument is grounded on the timing of known information, which was addressed above. Defendants also point out that the insufficiency of Plaintiffs' pleadings was raised back in August 2024 when Defendants filed their first Motion for Judgment on the Pleadings, but Plaintiffs took no action. As the Court has already explained, one cannot plead specific facts to support a theory if those facts are not yet known. Defendants fail to show how allowing the amendment prejudices them, other than potentially allowing a claim that they contend cannot be brought as a matter of law.

Finally, as to the availability of a continuance to cure such prejudice, because there does not appear to be any stated prejudice, there does not appear to be a need for a continuance. The

trial is currently set for June. Plaintiff has been pursuing the discovery it believes necessary to establish its claims—whether that will be sufficient is an issue for another day.

Based on the foregoing considerations under Rule 16(b), the Court finds that Plaintiff has established good cause, and now the Court moves to the analysis under Rule 15.

### 2.    Should leave be granted?

With Plaintiffs having established good cause, the Court must now decide whether to grant leave to amend under Rule 15(a). The Supreme Court delineates five factors for a court to consider when deciding whether leave to amend a complaint should be granted: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *See Rozenzweig,* 332 F.3d at 864.

The Court has already found there was not undue delay, nor has any prejudice been shown. Plaintiffs urge there is no bad faith nor dilatory motive because they simply seek to specifically plead the direct negligence of Defendants and their basis for punitive damages. [167] at p. 8. Defendants do not claim otherwise. It seems Plaintiffs' theories of IMC's negligence have been the subject of much discovery (and discovery disputes) in this case.

Finally, as to futility, this is the main issue pressed by Defendants. Because when Defendants responded to Plaintiffs' Motion for Leave, the Court had not yet ruled on Defendants' Motion for Judgment on the Pleadings, most of Defendants' arguments against the amendment mirror their prior "no direct claim whatsoever" argument. [192] at pp. 5-14. Now the Court has ruled, and based on that ruling, the Court will not address any defense argument regarding futility grounded in Defendants' position that Plaintiffs can never plead or prove a claim for direct negligence in any form under Mississippi law because IMC has stipulated to vicarious liability. The Court has found that Plaintiffs may bring gross negligence claims, which, if viable, could

provide a basis for punitive damages. However, the ability to bring such a claim and Plaintiffs'

having properly done so are two different things.

That having been said, an amendment can also be futile "if it would fail to survive a Rule

12(b)(6) motion [to dismiss]*." Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d

368, 378 (5th Cir. 2014); *SW Airlines*, 120 F.4th at 482. Despite the parties' valiant efforts to argue

the merits/truthfulness of various allegations, under a 12(b)(6) standard, a court must "accept as

true all well-pleaded facts and construe the complaint in the light most favorable to the plaintiff."

*SW Airlines*, 120 F.4th at 482 (quoting *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336

(5th Cir. 2023) (citation omitted). Those "well-pleaded facts must make relief plausible, not merely

possible." *Benefield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019).

Defendants' final argument is that Plaintiffs have not pleaded sufficient factual content to

state a plausible claim. [17] The Court has carefully reviewed the newly pled allegations in

Paragraphs 15-49 of the Second Amended Complaint. In so doing, the Court considers the

underlying implications of the *Gonzalez* case, *supra*. *Gonzalez* involved this simple set of facts:

> Clayton T. Harmer, an employee of Coastal Industrial Contractors, failed
> to yield to a stop sign. The ensuing collision injured Leighann Gonzalez, who filed suit
> against Coastal Industrial Contractors and Harmer. Coastal admitted vicarious
> liability by stipulation and then moved to dismiss Harmer. The court dismissed
> Harmer pursuant to Mississippi Rule of Civil Procedure 41. A bifurcated jury trial
> took place, and the jury awarded Gonzalez compensatory damages in the amount
> of $3.5 million. Before the punitive damages phase of the bifurcated trial, Gonzalez
> made an ore tenus motion for recusal and mistrial, which the judge denied. The
> court granted a directed verdict to Coastal on the issue of punitive damages.
> Gonzalez appeals.

*Gonzalez*, 316 So. 3d at 614. It was not until the directed verdict stage in a bifurcated trial, when

Plaintiff failed to present sufficient evidence of the company's gross negligence to justify punitive

---

[17] Defendants claim that Plaintiffs have failed to state a claim for punitive damages. [192] at 14. However, the Court
has already acknowledged that punitive damages are not a cause of action, and, likewise at this point, any argument
regarding the need for "clear and convincing evidence" is premature.

damages, that the defendant company prevailed.[18] So in determining the sufficiency of Plaintiffs'

allegations, the Court looks to Supreme Court's observations in *Gonzalez*.

In that case, the plaintiff proceeded on a claim for the company's gross negligence in the

hiring and retention of the driver. *See id.* at 615 (¶5), 617(¶ 15). It appears the negligent retention

argument was as follows: Coastal had a duty only to permit *qualified* drivers to operate its vehicles

pursuant to Federal Motor Vehicle Safety Regulations at 49 C.F.R. § 391.11. *Id*. at 617 (emphasis

added). Pursuant to 49 C.F.R. § 391.15, a driver could be *disqualified* from driving for texting or

using a mobile phone while driving a commercial vehicle. *See id*. at 617-618. The plaintiff claimed

that the driver frequently made calls while driving the commercial vehicle for Coastal, including

a call on the day of the accident, as well as several text messages. *See id*. at 618. However, the

court found that the plaintiff had provided no evidence that the driver was "talking on his phone

*while driving* on the day of the accident or that the text messages had been read." *Id*. Rather the

evidence showed that when the driver attempted to place a call he was stopped at a store. *See id.*

Here, the proposed Second Amended Complaint alleges not only that Davis was manually

using his handheld mobile device at the time of the accident, but that IMC communicated with its

drivers via call or text. Plaintiffs allege that IMC knew that Davis had a ticket for using a handheld

cellphone but provided no training about cellphone use and conducted no monitoring of cellphone

use even though IMC had the technology. There are other allegations as well. Regardless of

whether clear and convincing evidence will ultimately prove Plaintiffs' allegations, Plaintiffs are

entitled to make their claims. Based on its review, the Court finds that the allegations of the Second

Amended Complaint, when taken as a whole and taken as true, sufficiently state a claim for gross

negligence against IMC.

---

[18] The plaintiff proceeded on a claim for the company's gross negligence in the hiring and retention of the driver. *See Coastal*, 316 So. 3d at 615 (¶5), 617(¶ 15).

## IV.    CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendants' Amended Motion for Judgment on the Pleadings [116] is granted in part and denied in part. The Motion granted in so far as any direct, simple negligence claims against IMC contained in Counts IX, X, XI, and XII are dismissed as a matter of law due to IMC's stipulation to vicarious liability for Davis's negligence. The Motion is denied in so far as the Court finds that any gross negligence claims against IMC shall not be dismissed as a matter of law. However, because Plaintiffs failed to sufficiently plead any claims of gross negligence, all claims in Counts IX, X, XI, and XII against IMC are dismissed.

Notwithstanding, the Court has found that Plaintiffs have established good cause for modifying the case management deadlines, and the Court will allow leave to amend. Therefore, it is further ORDERED that Motion for Leave to File a Second Amended Complaint [166] is granted to allow Plaintiffs to bring claims of gross negligence against IMC. The Second Amended Complaint contained in Doc No. [166-1] is deemed filed as of the date of this Order, and Defendants shall file an Answer within the time allowed under Federal Rule of Civil Procedure 15(a)(3).[19]

SO ORDERED AND ADJUDGED this 4th day of March 2025.


/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

---

[19] Having already reviewed the sufficiency of the pleading, the Court will not entertain a Motion to Dismiss.